# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALON J. VAINER, M.D., F.A.C.P. and DANIEL D. BARBIR, R.N.,<br><br>      Plaintiffs,<br><br>v.<br><br>DAVITA INC. and GAMBRO HEALTHCARE, INC., and their respective subsidiaries and affiliated companies,<br><br>      Defendants.<br>_____<br>DAVITA INC. and DVA RENAL HEALTHCARE, INC. F/K/A GAMBRO HEALTHCARE, INC.,<br><br>      Counterplaintiffs,<br><br>v.<br><br>ALON J. VAINER, M.D., F.A.C.P.<br><br>      Counterdefendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action File No.<br>1:07-CV-2509-CAP |

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

## <u>Introduction</u>

Defendants move for partial summary judgment on all claims in this action against Gambro Healthcare, Inc.[1] ("Gambro") arising on or before December 1, 2004 because the United States released Gambro from all such claims in a prior settlement.

In late 2004, Gambro settled a prior False Claims Act[2] ("FCA") action—styled *United States ex rel. Bander v. Gambro Healthcare U.S., Inc*., No. 01-cv-00553 (E.D. Mo.)—and as part of that settlement, the United States released Gambro from all future liability related to its alleged submission of claims for vitamin D and iron drugs that purportedly lacked medical necessity from January 1, 1991 to December 1, 2004 (the "Bander Settlement Agreement").  Because Relators Vainer and Barbir's current action pertains exclusively to the alleged submission of false claims from 2002 through 2010 for vitamin D and/or iron drugs that were purportedly not medically necessary, Relators' claims against Gambro in this case for all claims submitted on or before December 1, 2004 are barred by the prior release.

---

[1] Gambro Healthcare, Inc. changed its name to DVA Renal Healthcare, Inc. in 2005.

[2] 31 U.S.C. §§ 3729 – 3733.

954871.1

2

Although discovery has just begun, the early adjudication of this motion is warranted. Whether the Bander Settlement Agreement bars a subset of the claims in this action is a question of law that can be decided by applying the language of the settlement agreement to Relators' allegations in the Fourth Amended Complaint ("FAC") and thereby narrow the issues in this case.

Equally important, the disposition of this motion could materially impact the scope and cost of discovery. As counsel for Defendants alerted Relators' counsel in the Joint Planning Conference on March 27, 2012, Gambro documents from periods prior to the 2005 Gambro/DaVita merger will likely be difficult to locate, access, and search, and significant amounts of these materials may not be reasonably accessible. Thus, an early dismissal of Relators' allegations against Gambro for claims submitted prior to December 2, 2004 could save all parties the significant time and expense needed to produce and review such documents and avoid any otherwise unnecessary discovery disputes involving requests for Gambro materials from that period.

954871.1

## Facts

**I.    The Bander Settlement Agreement Released All the Government's Claims Against Gambro for Certain "Covered Conduct" Prior to December 2, 2004.**

In 2001, Steven J. Bander filed an FCA *qui tam* action against Gambro in the U.S. District Court for the Eastern District of Missouri.  Bander's action involved, *inter alia*, claims that Gambro submitted false claims for various dialysis-related drugs, specifically including vitamin D (*e.g.*, Zemplar) and intravenous iron (*e.g.*, Ferrlecit).[3]  On December 1, 2004, the United States and Gambro settled a number of the claims raised in the *Bander* action.[4]  Pursuant to the Bander Settlement Agreement, Gambro paid more than $323 million in exchange for the government's release of all claims the United States "ha[d] or may have" related to several broad categories of "Covered Conduct" by Gambro.[5]

_____

[3] *See* Second Amended Complaint ¶¶ 38-46, 67-100, Dkt. No. 45, in case number 4:01-cv-00553-DDN(*United States ex re. Steven J. Bander v. Gambro Healthcare U.S., Inc.*).

[4] *See* Exhibit A, Declaration of Robert C. Perraud, authenticating a true and correct copy of the Bander Settlement Agreement, attached thereto as Exhibit 1.  *See* Bander Settlement Agreement at 2.

[5] *Id*. at 10, 12.

Specifically, the United States, acting through the Department of Justice, the

Office of Inspector General of the Department of Health and Human Services, and

TRICARE Management Activity, entered the following release:

> [T]he United States, on behalf of itself, its officers, agents, agencies, and departments, agrees to release Gambro, together with its current and former parents, brother and sister corporations . . . and their predecessors, successors, and assigns . . . from any civil or administrative monetary claim the United States has *or may have* for the *Covered Conduct* under the *False Claims Act, 31 U.S.C. §§ 3729-3733* . . . .[6]

The Bander Settlement Agreement defines "Covered Conduct" as "the

following alleged conduct" including, in relevant part, that:

> *Gambro, from January 1, 1991 to December 1, 2004, submitted, or caused to be submitted,  false claims to government healthcare programs for Vitamin D drugs*.  The United States contends such Vitamin D claims *were false because they* contained preemptive ICD-9 codes, *lacked medical necessity*, and/or lacked the documentation to support medical necessity;

and

> *Gambro, from January 1, 1991 to December 1, 2004, submitted, or caused to be submitted, false claims to government healthcare programs for Iron drugs*.  The United States contends such Iron claims *were false*

---

[6] *Id*. at 11-12 (emphasis added).  Concurrent with and incorporated into the Bander Settlement Agreement, Gambro entered a Corporate Integrity Agreement.  In exchange, the Office of Inspector General of the Department of Health and Human Services "agree[d] to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs . . . for the [same defined] *Covered Conduct*."  *Id*. at 12-13 (emphasis added).

> ***because they*** contained preemptive ICD-9 codes, ***lacked medical necessity***, and/or lacked the documentation to support medical necessity;[7]

Notably, the broad definitions of "Covered Conduct" related to vitamin D and iron drugs include Gambro's submission of claims that "contained preemptive ICD-9 codes, ***lacked medical necessity***, and/***or*** lacked the documentation to support medical necessity."[8]

Importantly, the Bander Settlement Agreement's definition of "Covered Conduct" is not defined or limited by reference to the *Bander* complaint.  This interpretation is compelled by two aspects of the agreement.  First, because the Bander Settlement Agreement releases both claims that the United States "has" and those that it "may have,"[9] the release is necessarily not limited to the claims actually asserted in the complaint.  Second, "Covered Conduct" is defined as the "following alleged conduct."[10]  In other words, the Bander Settlement Agreement independently identifies the scope of the conduct being released, rather than incorporating or referencing conduct alleged in the complaint.

---

[7] *Id*. at 4-5 (emphasis added).

[8] *Id*. (emphasis added).

[9] *Id*. at 12.

[10] *Id*. at 2-3.

954871.1

**II.    The FAC's Claims Against Gambro Fall Squarely Within the Settlement's Definition of "Covered Conduct."**

Relators' claims against Gambro in this action fall squarely within the scope of the conduct released by the government in the 2004 Bander Settlement Agreement, which includes all claims for vitamin D and iron that were allegedly not medically necessary.

The FAC expressly alleges that Gambro violated the FCA by submitting claims for medically unnecessary vitamin D and iron drugs in violation of Medicare's prohibition on payment for medically unnecessary services.[11]  The primary statute upon which Relators base their claims is 42 U.S.C § 1395y(a)(1), which states that Medicare is only authorized to pay for items and services that are "reasonable and *necessary*."[12]  In addition, Relators' FAC asserts that Defendants vitamin D and iron drug claims submissions violated 42 U.S.C. § 1320c-5(a)(1), which requires that Medicare-covered services will be provided "***only when***, and to the extent, ***medically necessary***."[13]  Just as importantly, Relators' FAC summarizes the allegations in Counts I and II as covering Defendants' submission of false

---

[11] Dkt. No. 36 (FAC) ¶¶ 65-70.  In addition to statutes, Relators' FAC cites and references similar ***regulatory provisions*** prohibiting Medicare payments for medically unnecessary care.  *Id*. ¶ 69 (citing 42 C.F.R § 411.15(k)).

[12] FAC ¶¶ 65-67, 69 (quoting 42 U.S.C. § 1395y(a)(1)(A)) (emphasis added).

[13] FAC ¶ 70 (quoting 42 U.S.C. § 1320c-5(a)(1)) (emphasis added).

claims or statements "to CMS for unreasonable and ***unnecessary medication*** and waste caused by the [alleged conduct]."[14]

Consistent with the allegations in the FAC, Relators' Response to Defendants' Motion to Dismiss also states that their claims are based on Defendants' submission of claims for vitamin D and iron drugs that lacked medical necessity.  There, Relators expressly assert that "Relators . . . allege that Defendants submitted claims for services that were ***not medically necessary***."[15]

Because the Bander Settlement Agreement's definition of "Covered Conduct" includes vitamin D and iron claims that were allegedly false for lack of medical necessity, Relators' claims fall squarely within this definition.  As such, all Relators' allegations relating to claims submitted by Gambro on or before December 1, 2004 were released in the Bander Settlement Agreement and thus, should be dismissed from this action.

---

[14] FAC ¶¶ 310, 318 (emphasis added).

[15] Dkt. No. 71 (Relators' Response in Opposition to Defendants' Motion to Dismiss) at 34, n.21 (emphasis added).

## <u>Argument and Citation to Authority</u>

## I.  **Standard for Motion for Partial Summary Judgment**

Summary judgment should be granted when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.[16]  The interpretation of a written settlement agreement is a question of law.[17]  This is equally true when the agreement is the settlement of a *qui tam* action to which the United States is a party.[18]

Federal Rule of Civil Procedure 56(a) specifically authorizes parties to move for summary judgment on "part of" a claim or defense, and Local Rule 56.1(D) directs parties to file such motions "as soon as possible."  Indeed, the Eleventh Circuit has recognized that district courts should grant early motions for partial summary judgment when doing so would narrow the issues in a case.[19]  The early

---

[16] Fed. R. Civ. P. 56(c).

[17] *Jones v. Wynne*, 266 F. App'x 903, 906 (11th Cir. 2008) (holding that "[t]he construction of a settlement agreement is a question of law" and a proper basis for a summary judgment ruling); *Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987) (same).

[18] *See, e.g., United States ex rel. Rahman v. Colkitt*, 106 F. App'x 804, 809 (4th Cir. 2004) (reviewing *qui tam* settlement and holding "[t]he proper interpretation of a settlement agreement, as with any contract, is a question of law").

[19] *See In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995) ("Pretrial procedures such as summary judgment . . . are the appropriate devices to narrow the issues and disclose the boundaries of the claim or defense."); *see also Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981) ("In cases that involve

954871.1

9

disposition of this motion could also have a significant impact on the scope and expense of discovery.  If all claims as to Gambro on or before December 1, 2004 have been released, the need for the parties to address whether most Gambro documents from that remote period of time can be located, recovered, accessed, and searched (and at what cost) would be significantly minimized or altogether avoided.

## II.     The Unambiguous Release in the Bander Settlement Agreement Covers Relators' Claims Against Gambro in this Action.

It is well-settled that when settlement agreements are unambiguous, courts should (1) give their words and terms their plain and ordinary meanings;[20] (2) not add or subtract any language from the face of a clearly worded agreement;[21] and (3) give meaning to every part of the agreement and avoid leaving a portion of the agreement meaningless.[22]

---

complicated fact patterns and multiple causes of action, summary judgment may be proper as to . . . some issues but not as to others . . .; a careful and meticulous analysis first by the parties, but ultimately by the district court will aid significantly in preventing the waste of private and judicial resources and time.").

[20] *Schwartz*, 807 F.2d at 905.

[21] *Id.*

[22] *Rahman*, 106 F. App'x  at 809 ("When construing a provision of a contract, we must 'give meaning and effect to every part of the contract, rather than leave a portion of the contract meaningless or reduced to mere surplusage.'").

The Court should apply the unambiguous description of "Covered Conduct" from the Bander Settlement Agreement and give meaning to its express coverage of claims that are alleged to be false due to a lack of medical necessity.

Likewise, the Court should accept Relators' choice and characterization of their claims in both their FAC and Response in Opposition to Defendants' Motion to Dismiss.  Throughout both pleadings, Relators expressly and repeatedly state that Defendants purportedly violated the FCA by submitting claims for services that were not medically necessary.[23]  As the master of their complaint, Relators' characterizations of their allegations in the FAC are controlling for the purpose of determining whether their claims have been released.[24]

Because all the claims Relators have articulated against Gambro in this action fall squarely within the Bander Settlement Agreement's definition of Covered Conduct, Relators' claims against Gambro have been released for all

---

[23] FAC ¶¶ 5-6, 65-67, 69-70, 75, 77, 99, 103, 105, 113, 118, 122, 155, 158-161, 167, 171, 176, 184, 203, 216, 218, 225, 241, 247-252, 255, 262, 266, 268, 270-271, 277, 283, 290, 303, 310-312, 318-319, 325-328; Relators' Response in Opposition to Defendants' Motion to Dismiss at 34, n.21.

[24] Relators' characterization of their claims control for purposes of this motion. *See, e.g., United States v. Jones*, 125 F.3d 1418, 1428 (11th Cir. 1997) ("The plaintiff is the master of the complaint.  The plaintiff selects the claims that will be alleged in the complaint. Some may be substantially justified, others may not."). Defendants, nevertheless reserve their rights to subsequently argue in this action that Relators' claims are legally deficient and factually unfounded.

activity occurring on or before December 1, 2004, and Relators are barred from pursuing such claims further in this action.

## III.   *Qui Tam* Settlements Regularly Bar Subsequent Actions by New Relators.

It is well-recognized that a defendant's prior settlement of an FCA case with the United States can bar subsequent actions by new relators.  "Relators in *qui tam* actions are acting on the behalf of the United States"[25] and have standing to sue only by virtue of an implicit assignment of rights from the federal government.[26] Given this relationship, relators cannot pursue claims previously settled by the government.[27]

Prior *qui tam* settlements routinely form the basis for dismissing subsequent FCA actions brought by new relators.[28]  In barring subsequent *qui tam* actions,

---

[25] *San Francisco Tech., Inc. v. Graphic Packaging Int'l*, 798 F. Supp. 2d 1333, 1336 (N.D.Ga. 2011) (citing *Stauffer v. Brooks Bros., Inc.*, 619 F.3d 1321, 1325 (Fed. Cir. 2010)).  It is clear that "if the government's claims are barred, so are the relator's."  *United States ex rel. Barmak v. Sutter Corp.*, No. 95 CV 7637, 2002 U.S. Dist. LEXIS 8509, *8 (S.D.N.Y. May 13, 2002); *see also United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 910 (9th Cir. 1998) ("A qui tam relator has Article III standing to sue only as a relator, on behalf of the government.").

[26] *See Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773-74 & n. 4 (2000).

[27] *See Barajas,* 147 F.3d at 909.

[28] *See, e.g., United States ex rel. Sun v. Baxter Healthcare Corp.*, No. 08-11200-PBS, 2012 U.S. Dist. LEXIS 12972 (D. Mass. Jan. 26, 2012) (prior *qui tam* settlement of claims for inflated drug prices barred later action relating to different

courts have held that the language of the applicable settlement agreement need not be limited to the allegations in the complaint from the preceding action. For example, in *United States ex rel. Sun v. Baxter Healthcare Corp.*[29] relators claimed that Baxter Healthcare inflated the price of drugs Recombinate and Advate. A previous *qui tam* action had alleged that Baxter Healthcare had inflated the prices of numerous drugs including Recombinate, but not Advate. The prior action had resulted in a settlement agreement between Baxter Healthcare and the original relator that released Baxter from any claim "which has been asserted, could have been asserted, or could be asserted in the future . . . for or arising from any of the Covered Conduct."[30] Covered Conduct was defined to include Baxter's submission of false claims for all drugs "sold by or on behalf of any Baxter Party . . . including, without limitation, Baxter Covered Drugs with Labeler Codes 00338 and 00944 . . . ."[31] Importantly, both Recombinate and Advate fell under Labeler

---

drugs); *San Francisco Tech.*, 798 F. Supp. 2d 1333 (prior false patent marking settlement barred later action concerning different patents); *Barajas*, 147 F.3d at 910 (prior *qui tam* settlement for faking tests on flight equipment barred later action for false temperature certifications made on same flight equipment).

[29] No. 08-11200-PBS, 2012 U.S. Dist. LEXIS 12972 (D. Mass. Jan. 26, 2012).

[30] *Id*. at *55.

[31] *Id*. at *56.

Code 00944.  The United States was not a party to the Baxter settlement agreement (unlike here), but it consented to the agreement.

In *Baxter Healthcare*, the relators argued that, because the original action did not involve Advate, the government never consented to release the Advate claims.  Specifically, they argued that the released claims had to be read in the context of the complaint at issue.  The court rejected this argument, noting that the release language, including language that it covered claims that "could have been asserted, or could be asserted in the future," indicated that the settlement agreement was not limited to drugs identified in the complaint.[32]  The court went on to state that "*[c]ourts regularly sanction broad releases contained within settlement agreements in qui tam and other cases*."[33]  The court aptly noted that "[t]he government may veto a settlement agreement that it believes provides too broad a release by refusing to consent pursuant to 31 U.S.C. § 3730(b)(1)."[34]

Courts have also recognized that when the government reaches a settlement for false claims, the defendant cannot be required to pay a second time for those claims, even if different conduct is in question.  In *United States ex rel. Barajas v.*

---

[32] *Id*. at *62.

[33] *Id*. (emphasis added).

[34] *Id*. at *59.

*Northrop Corp*,[35] the government settled an FCA action with Northrop for the company's receipt of payment for flight data transmitters on which required testing had been faked.  During its investigation, the government learned that Northrop had also falsely certified that the transmitters would function down to 65 degrees below zero Fahrenheit—a matter unrelated to the fake tests at issue.  Following the settlement, the original relator brought a second action against Northrop, this time for the flight data transmitters' false temperature certification.  The Ninth Circuit held that Northrop had already paid for those false claims and could not be required to pay again, even if the claims were false for two separate reasons:

> ***Once the government . . . releases its claim, there is no more to be recovered by anyone***, because only the government can have a claim for a false claim made upon the government. . . . There was only one claim that was false, Northrop's claim for payment on its invoices for the flight data transmitters.  At most the same claim was false for two reasons . . .[36]

The Court noted that this finality was critical to the government's ability to settle *qui tam* actions:

> The government's ability to settle [*qui tam*] cases depends on its power to give defendants releases that will protect them from more litigation ***based on the same invoices***.  If the government cannot give

---

[35] 147 F.3d 905 (9th Cir. 1998).

[36] *Id*. at 910-11 (emphasis added).

a defendant such a release, then the defendant might as well go to trial.[37]

While this case is far simpler than both the *Baxter Healthcare* and *Northup* cases, the same policies apply.  Gambro's settlement payment in the *Bander* case covered its claims for vitamin D and iron submitted on or before December 1, 2004, and Relators should not be permitted to seek an additional FCA recovery on the same claims in this case.

## **CONCLUSION**

The Bander Settlement Agreement expressly released Gambro from liability for the submission of claims for medically unnecessary vitamin D and iron drugs on or before December 1, 2004.  The Court need only apply the unambiguous language of that agreement to conclude that Relators are barred from pursuing their FCA allegations against Gambro involving claims for the same drugs on the same basis on or before that date.   Because Gambro has already settled those claims with the United States, Defendants respectfully request that the Court grant their motion for partial summary judgment as to all claims against Gambro arising on or before December 1, 2004.

---

[37] *Id.* at 910 (emphasis added).

Respectfully submitted, this 25th day of April, 2012.

/s/ Benjamin E. Fox

| | |
|---|---|
| Mark W. Pearlstein (pro hac vice) | H. Lamar Mixson |
| Laura McLane (pro hac vice) | Georgia Bar No. 514012 |
| MCDERMOTT WILL & EMERY LLP | John E. Floyd |
| 28 State Street | Georgia Bar No. 266413 |
| Boston, MA 02109-1775 | Ben E. Fox |
| Telephone: 617-535-4000 | Georgia Bar No. 329427 |
| Facsimile: 617-535-3800 | BONDURANT, MIXSON & |
| *mpearlstein@mwe.com* | ELMORE, LLP |
| *lmclane@mwe.com* | 3900 One Atlantic Center |
| | 1201 West Peachtree Street, N.W. |
| Bobby Lee Cook (Ga. Bar No. 183100) | Atlanta, Georgia  30309 |
| COOK & CONNELLY | Telephone: 404-881-4100 |
| 9899 Commerce Street | Facsimile: 404-881-4111 |
| P.O. Box 370 | *mixson@bmelaw.com* |
| Summerville, GA 30747 | *floyd@bmelaw.com* |
| Phone: 706-857-3421 | *fox@bmelaw.com* |
| Fax: 706-857-1520 | |
| *cookandconnelly@windstream.net* | *Attorneys for* |
| | *Defendants/Counterplaintiffs* |
| | *DaVita Inc. and* |
| | *Gambro Healthcare, Inc.* |

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that this document complies with the font and point selections set forth in Local Rule 5.1(C). This document was prepared in Times New Roman 14 point font.

Respectfully submitted, this 25th day of April, 2012.

*/s/ Benjamin E. Fox*
Benjamin E. Fox

954871.1

18

## CERTIFICATE OF SERVICE

I hereby certify that, this 25th day of April, 2012, a copy of the foregoing

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND**

**BRIEF IN SUPPORT** was electronically filed with the Clerk of Court using the

CM/ECF system which will automatically send e-mail notification of such filing to

counsel as follows:

Daniel A. Caldwell
U.S. Attorney's Office – Atlanta
Assistant Unites States Attorney
600 Richard B. Russell Building
75 Spring Street, S.W.
Atlanta, GA 30303
*daniel.caldwell@usdoj.gov*

Jeffrey D. Horst
Zahra S. Karinshak
Christopher E. Adams
Krevolin & Horst. LLC
1201 West Peachtree Street
Suite 3250
Atlanta, GA 30309
*horst@khlawfirm.com*
*karinshak@khlawfirm.com*
*adams@khlawfirm.com*

L. Lin Wood, Jr.
Katherine V. Hernacki
Stacey Godfrey Evans
Wood, Hernacki & Evans, LLC
1180 Peachtree Street, N.W.
Suite 2400
Atlanta, GA 30309
*lwood@whetriallaw.com*
*khernacki@whetriallaw.com*
*sevans@whetriallaw.com*

Marlan B. Wilbanks
Tyrone M. Bridges
Wilbanks & Bridges, LLP
Suite 1075
3414 Peachtree Road, N.E.
Atlanta, GA 30326
*mbw@wilbanks-bridgeslaw.com*
*tmb@wilbanks-bridgeslaw.com*

*/s/ Benjamin E. Fox*
Benjamin E. Fox