UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALON J. VAINER, M.D., F.A.C.P., and DANIEL D. BARBIR, R.N., <br><br>     Plaintiffs, <br><br> v. <br><br> DAVITA, INC. and GAMBRO HEALTHCARE, INC., and their respective subsidiaries and affiliated companies, <br><br>     Defendants. | CIVIL ACTION NO. <br><br> 1:07-CV-2509-CAP |

**O R D E R**

This matter is before the court on the Relators' motion for sanctions [Doc. No. 567].

**I.   Background**

Discovery in this case has, in many ways, been a series of protracted fights resulting in furious rounds of briefing, hearings, and accusations. One such fight over the Relators' attempts to learn about Davita, Inc.'s use of a computer program called Snappy has culminated in the Relators' motion for sanctions that is currently before the court. After the parties' extensive briefing and a three-day evidentiary hearing on this motion, the court is convinced that the defendants have spoiled discovery related to Snappy to

such a degree that sanctions are appropriate and the court must reopen discovery.

The Relators' primary allegation in this suit is that the defendants purposely manipulated their dosing protocols and policies for certain drugs to illegally maximize their reimbursements for these drugs from Medicare (specifically the reimbursement they would get for the waste or discarded portion of the drugs left over in a vial after administration). Part of the Relators' allegation is that Davita intentionally used Snappy to implement portions of its reimbursement maximization schemes. Snappy is a company-wide computer program that, among other functions, allowed doctors and nurses to input, retrieve, and code dosing amounts for the drugs Davita uses in its kidney dialysis clinics. Naturally, the Relators sought discovery on how Snappy worked, how doctors and nurses used the program, and whether it in fact suggested or provided nurses with doses that created medically unnecessary waste.

## II.   The Relators' Motion for Sanctions

### A. Legal Standard

"Federal courts have the inherent power to impose sanctions on parties, lawyers, or both." *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006). "This power is derived from the court's need to manage its own

affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* "The key to unlocking a court's inherent power is a finding of bad faith." *Id.* "A party demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* "Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991).

### B. Analysis

In response to the Relators' Snappy-related discovery requests, the defendants identified Richard Tetley as Davita's Rule 30(b)(6) corporate representative who had the most knowledge of how Snappy worked during the relevant time period. After preparing for his 30(b)(6) deposition for thirty-eight hours, Tetley testified without equivocation that Snappy did not suggest a dose for one of the three drugs at issue in this case, Venofer, prior to 2011. Tetley Dep., Oct. 5, 2012, at 28 [Doc. No. 567-12 at 3]. He stated that Snappy could display only a dose range to the user for this drug. Tetley Continued Dep., Oct. 30, 2012, at 217, 273 [Doc. No. 567-12 at 14, 18]. Tetley testified that Snappy did, however, recommend doses for the other two drugs at issue in this case, Zemplar and Epogen. *Id.* at 108, 125 [Doc. No. 567-12 at

5, 10]. Despite this unequivocal testimony, the defendants filed a declaration from Tetley one year after his deposition in which he admitted that his deposition testimony was false and that Snappy did indeed recommend doses of Venofer prior to 2011. *See* Tetley Decl. at ¶ 7 [Doc. No. 567-11 at 4]. Tetley and the defendants claim that his false testimony was based on Tetley misremembering the details of the Snappy program during his deposition, despite the fact that the defendants had produced Tetley as the witness most knowledgeable about Snappy. His newfound understanding of how Snappy actually worked came only after the defendants' computer expert had rebuilt a working version of the Snappy system that was in use during the relevant time period.

During the year of discovery in which Tetley's original testimony stood as the testimony of record, the Relators deposed several other witnesses about how Snappy worked, including nurses, executives, and clinic managers. The Relators repeatedly asked these witnesses whether Snappy recommended doses for Venofer because, despite what Tetley had testified, the Relators themselves, a former doctor and a former nurse at several Davita clinics, testified that Snappy did indeed recommend doses of Venofer. Several of the new witnesses that the Relators deposed initially testified that Snappy did suggest doses of Venofer. Then, after a break in the deposition or

in an errata sheet, these witnesses would change their testimony to hue to Tetley's false testimony. For example, Shaun Collard, who has been the Vice President of Clinical Operations at Davita since 2000, initially testified when asked about Snappy suggesting Venofer doses that the program would generate a calculated dose for the drug. Collard Dep., Jun. 6, 2013, at 368 [Doc. No. 567-40 at 9]. Then, in an errata sheet, Collard specifically changed his testimony to state that Snappy did not suggest doses for Venofer during the relevant time period. Collard Errata [Doc. No. 567-41]. The defendants now admit that this errata change was a mistake and is incorrect, but they have not moved to withdraw the errata and it remains on the court's docket as evidence.[1]

After the defendants' computer expert recreated a working version of Snappy and Tetley filed his declaration admitting to providing false testimony, the Relators filed the instant motion for sanctions asking the court to set aside the defendants' answer and enter a default judgment. The Relators argue that the defendants have pervasively and intentionally manipulated evidence and tampered with witnesses in an attempt to hide the

---

[1] Collard did submit a declaration with the defendants' post-hearing brief [Doc. No. 912-3] dated July 15, 2014.

truth about what functions Snappy performed during the relevant time period.

The court finds that at best, Tetley's initial false testimony led the defendants and their counsel astray during the subsequent months of discovery. Nevertheless, after several witnesses testified that Snappy did indeed suggest Venofer doses, the defendants did not reexamine Tetley's testimony and instead changed and molded the subsequent witnesses' testimony to match Tetley's. At worst, the defendants purposely manipulated the evidence and witnesses to hide the truth from the Relators and the court. The court does not believe that the evidence the Relators have submitted *unequivocally* shows that the defendants committed this more nefarious level of discovery practice, but the "forgetfulness" and changed testimony from so many witnesses is highly suspect.

Furthermore, the defendants' conduct in relation to items like Collard's admittedly false errata sheet is unacceptable. The defendants cannot argue that they unintentionally made a mistake by changing his testimony and then simply sit idle while the Relators and the court continue to accept the change as correct. The defendants had an affirmative duty to correct this error in a timely manner under Federal Rule of Civil Procedure 26(e)(1)(A).

Instead, the Relators had to file a motion for sanctions to bring the issue to the court's attention.

### III. Conclusion

After reviewing the evidence, the court concludes that the defendants' conduct during Snappy-related discovery warrants sanctions, although not the sanction of setting aside their answer as the Relators have requested. The defendants' extreme delay in correcting Tetley's testimony, their attempts to ensure that subsequent witness's testimony hued to Tetley false statements, and their failure to retract other admittedly false statements even after the Relators filed this motion for sanctions amounts to at least enough of a showing of bad faith to reopen discovery and award attorney's fees. Accordingly, the Relators' motion [Doc. No. 567] is GRANTED in part and DENIED in part. The court will reopen discovery on a limited basis. The court has read and considered the parties' post hearing briefs, but the parties will need to provide further argument before the court can decide the parameters of the new discovery. Thus, the court will hold a hearing on September 9, 2014 at 10:30 AM in Courtroom 2307, United States Courthouse, 75 Spring St. SW, Atlanta, Georgia 30303, to hear argument from both sides on what the new discovery should involve.

The Relators should provide the court with details about the new depositions they wish to take, copies of the new interrogatories and requests to admit they wish to propound, the ten new document requests, and the logistics of having their computer expert review a working version of Snappy.

The defendants should be prepared to explain in more detail the idea of a neutral expert mentioned in their brief [Doc. No. 912] and outlined in Exhibit A to that brief. The court also anticipates allowing some or all of the re-depositions of the individuals listed in the Relators' post-hearing brief [Doc. No. 908]. A plan for the logistics of these re-depositions is needed. Are the witnesses available locally? What arrangements need to be made for the depositions?

Finally, the amount of attorney's fees and costs awarded to the Relators will be determined after the close of discovery or the resolution of the parties' case in chief. The court contemplates that the Relators may be entitled to attorney's fees and costs for (1) any prior discovery that was impeded or spoiled because of the defendants' actions in the Snappy-related discovery, (2) the entirety of the new discovery, and (3) the cost of filing the motion for sanctions. The Relators should keep meticulous records of their expenses for the new discovery.

The Relators are DIRECTED to file a motion for attorney's fees and costs within 30 days of an entry of final judgment in this case, if not ordered to do so sooner. The court will then assess the specific categories of fees that the Relators will be entitled to and the amount of the award.

**SO ORDERED** this 12th day of August, 2014.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge