# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice, (collectively, the "United States"), DaVita HealthCare Partners Inc. and DVA Healthcare Renal Care, Inc. (collectively, "DaVita"), and Alon J. Vainer, M.D. and Daniel D. Barbir, R.N. ("Relators") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

### RECITALS

A.       Defendant DaVita Healthcare Partners Inc. is a Delaware corporation with its corporate headquarters located in Denver, Colorado.  DaVita is a provider of dialysis services for patients suffering from chronic kidney failure, also known as end stage renal disease or ESRD.  In October 2005, DaVita acquired the U.S. based clinics of Defendant Gambro Healthcare, Incorporated.  As of December 31, 2010, DaVita operated or provided administrative services to approximately 1,612 dialysis facilities located in approximately 42 states across the United States, and treated approximately 125,000 patients.   Additionally, as of December 31, 2010, DaVita provided acute inpatient dialysis services in approximately 750 hospitals and related laboratory services, and its dialysis and related lab services businesses accounted for approximately 94% of its consolidated net operating revenues.

B.       Since 1972, the Government, through the Medicare ESRD program, has provided health care coverage for patients suffering from ESRD, regardless of age or financial circumstances.  ESRD is one of only two conditions eligible for Medicare

coverage both for dialysis and dialysis-related services and for all benefits available under the Medicare program.

C.       On October 11, 2007, Relators filed a *qui tam* action in the United States District Court for the Northern District of Georgia captioned *United States ex rel. Alon J. Vainer, M.D., F.A.C.P. and Daniel D. Barbir, R.N., Plaintiffs v. DaVita, Inc. and Gambro Healthcare, Inc.,* and their respective subsidiaries and affiliated companies, *Defendants*, No. 1:07-cv-2509-CAP, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action").   Subsequently, the Relators filed four amended complaints.   The operative complaint is Relators' Fourth Amended Complaint ("FAC"), which was filed on July 25, 2011, and is summarized in Paragraph D. below.

D.       In their FAC, Relators allege that DaVita violated the False Claims Act by intentionally submitting false and fraudulent claims to Medicare for the reimbursement of intentional and avoidable wastage of the drugs Zemplar, a Vitamin D deficiency medication, and Venofer, an iron deficiency medication.   Specifically, the FAC alleges, *inter alia,* that DaVita intentionally designed and implemented a scheme to create unnecessary waste from the administration of Zemplar and Venofer in order to fraudulently increase the reimbursements that it received from Medicare.

E.       The United States contends that DaVita submitted or caused to be submitted claims for payment to the Medicare Program (Medicare), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1.

F.      The United States contends that it has certain civil claims arising from DaVita's submission of claims to Medicare, for the period January 1, 2003, through December 31, 2010, for reimbursement for the discarded or unused amounts of Zemplar and Venofer, as well as for drug administrations of Zemplar and Venofer, through, *inter alia*, drug dosing protocols programmed into Snappy, DaVita's computer-based dose management system.  For instance, the United States contends that DaVita created unnecessary waste, and then billed the Government for such waste, by directing and/or mandating the use of, medication protocols and/or dosing grids that systematically manipulated: (1) the selection of single dose vial sizes of Zemplar; and (2) the amount and frequency of dosing with respect to Venofer.  The United States contends that DaVita created unnecessary waste of Venofer and Zemplar through drug protocols and mechanisms such as Snappy, and also provided administrations of Venofer and Zemplar through Snappy that were not reasonable and necessary.  Moreover, the United States also contends that DaVita's decision not to reenter single dose vials of Zemplar and Venofer contributed to unnecessary waste of Zemplar and Venofer, during the time period in which reentry was allowed.  This conduct is referred to below as the Covered Conduct.

G.      This Settlement Agreement is neither an admission of liability by DaVita nor a concession by the United States or Relators that their claims are not well founded. DaVita expressly denies the allegations of the United States and the Relators as set forth herein and in the Civil Action.

H.      Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement and to Relators' reasonable expenses, attorneys' fees and

costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.      No later than ten (10) days after the Effective Date of this Agreement, DaVita shall pay to the United States Four Hundred and Fifty Million Dollars (**$450,000,000**) (the "Settlement Amount") and interest on the Settlement Amount at a rate of 1.875% per annum (the Medicare trust fund rate) from April 16, 2015, to the date of payment by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney for the Northern District of Georgia.

2.      Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances and expressly waive the opportunity for a hearing or any objections to the Agreement pursuant to 31 U.S.C. § 3730(c)(2)(B). The United States and Relators and their heirs, successors, attorneys, agents, and assigns agree that they each retain all of their rights pursuant to the False Claims Act on the issue of the share percentage that Relators should receive of the Settlement Amount pursuant to 31 U.S.C. §3730(d)(2), and that no agreements concerning Relators' share have been reached to date.  All parties agree that the United States will pay the Relators' share from the Settlement Amount.

3.      The Settlement Amount does not include Relators' reasonable expenses,

attorneys' fees and costs, pursuant to 31 U.S.C. § 3730(d), which, along with other issues including information disclosure and the return of DaVita documents, have been negotiated separately by DaVita and Relators and their counsel, and are the subject of separate agreements.

4.      Subject to the exceptions in Paragraph 6 below (concerning excluded claims), and conditioned upon DaVita's full payment of the Settlement Amount, the United States (on behalf of itself, its agencies, officers, agents, employees, and servants) releases DaVita, together with its current and former parent corporations, direct and indirect subsidiaries; brother or sister corporations; divisions; current and former owners; joint ventures; current and former officers, directors, employees, and affiliates; and the successors and assigns of any of them, from any civil or administrative monetary claim the United States has or may have for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provisions creating a cause of action for civil damages or civil penalties which the Civil Division of the Department of Justice has actual or present authority to assert and compromise pursuant to 28 C.F.R. Pt. O, Subpart I, § 0.45(d); or the common law theories of payment by mistake, unjust enrichment, fraud, conversion, and misrepresentation.

5.      In consideration of the obligations of DaVita in this Agreement, and conditioned upon DaVita's full payment of the Settlement Amount, Relators, for themselves and for their heirs, successors, attorneys, agents, and assigns, release DaVita, its predecessors, and its current and former divisions, parents, affiliates, subsidiaries,

successors, joint ventures, and assigns, and their current and former owners, directors, officers, employees, and agents, and the heirs, successors, attorneys, agents, and assigns of any of them ("DaVita Parties") from any claims or allegations that Relators asserted or could have asserted, arising from the Covered Conduct and from all liability, claims, demands, actions, or causes of action whatsoever, whether known or unknown, fixed or contingent, in law or in equity, in contract or in tort, under any federal or state statute or regulation, or in common law, that Relators would have standing to bring in any capacity as of the Effective Date of this Agreement.  Relators acknowledge that they may later discover facts different from or in addition to those which they or their attorneys now know or believe to be true.  It is the intention of Relators to fully, finally, and forever settle and release all claims against the DaVita Parties, and the releases provided herein shall remain in effect notwithstanding the discovery or existence of any additional or different facts or the occurrence of any future events, circumstances or conditions.  Relators' claims that are released include but are not limited to any claims by Relators, Relators' counsel, or the heirs, successors, attorneys, agents, or assigns of any of them against the DaVita Parties arising from the filing of the Civil Action or the negotiation of this Agreement or the agreements referenced in Paragraph 3 above.

Provided, however, that Relators expressly reserve any claims or defenses related to reasonable expenses, attorneys' fees, and costs under 31 U.S.C. 3730(d) and any other claims or defenses expressly reserved under the separate agreements referenced above in Paragraph 3.

6.     Notwithstanding the releases given in Paragraph 4 of this Agreement, or

any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b.    Any criminal liability;

    c.    Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

    d.    Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e.    Any liability based upon obligations created by this Agreement.

7.    In consideration of the Relators' obligations set forth in this Agreement, DaVita, its predecessors, and its current and former divisions, parents, affiliates, subsidiaries, successors, joint ventures, and assigns, and the heirs, successors, attorneys, agents, and assigns of any of them ("DaVita Entities"), fully and finally release, waive, and forever discharge each of the Relators and their respective heirs, successors, assigns, agents, and attorneys, individually and collectively, from any claims or allegations that the DaVita Entities asserted or could have asserted, arising from the Covered Conduct and from all liability, claims, demands, actions, or causes of action whatsoever, whether known or unknown, fixed or contingent, in law or in equity, in contract or in tort, under any federal or state statute or regulation, or in common law, that the DaVita Entities would have standing to bring as of the Effective Date of this Agreement.  The DaVita Entities

acknowledge that they may later discover facts different from or in addition to those which they or their attorneys now know or believe to be true. It is the intention of the DaVita Entities to fully, finally, and forever settle and release all claims against Relators, and the releases provided herein shall remain in effect notwithstanding the discovery or existence of any additional or different facts or the occurrence of any future events, circumstances or conditions. The DaVita Entities' claims that are released include but are not limited to any claims by the DaVita Entities against Relators arising from the filing of the Civil Action or the negotiation of this Agreement or the agreements referenced in Paragraph 3 above.

Provided, however, that the DaVita Entities expressly reserve any claims or defenses related to reasonable expenses, attorneys' fees, and costs under 31 U.S.C. § 3730(d) and any other claims or defenses expressly reserved under the separate agreements referenced above in Paragraph 3.

8.     DaVita waives and shall not assert any defenses DaVita may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

9.     DaVita fully and finally releases the United States, its agencies, officers,

agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that DaVita has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and/or prosecution thereof.

10.   The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and DaVita agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

11.   DaVita agrees to the following:

a.   Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of DaVita, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)   the matters covered by this Agreement;

(2)   the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3)   DaVita's investigation, defense, and corrective actions

undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)     the negotiation and performance of this Agreement; and

(5)     the payment DaVita makes to the United States pursuant to this Agreement and any payments that DaVita may make to Relators, including costs and attorneys' fees;

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, and TRICARE Program (hereinafter referred to as Unallowable Costs).

b.     Future Treatment of Unallowable Costs:  If applicable, Unallowable Costs shall be separately determined and accounted for in non-reimbursable cost centers by DaVita, and DaVita shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by DaVita or any of its subsidiaries or affiliates to the Medicare, Medicaid, or TRICARE Programs.

c.     Treatment of Unallowable Costs Previously Submitted for Payment:  If applicable, DaVita further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid, any Unallowable Costs (as defined in this

Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by DaVita or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. DaVita agrees that the United States, at a minimum, shall be entitled to recoup from DaVita any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by DaVita or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on DaVita or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.       Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine DaVita's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

12.       This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent

provided for in Paragraph 14 (concerning waiver for beneficiaries), below.

13.     DaVita agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payers based upon the claims defined as Covered Conduct.

14.     Upon receipt of the payment described in Paragraph 1, above, the United States shall file a written consent to dismissal of the Civil Action, and Relators shall promptly sign and file in the Civil Action a Voluntary Dismissal of the Civil Action pursuant to Rule 41(a)(1). Said dismissal shall be with prejudice to Relators as to all allegations in Relators' complaint, with prejudice to the United States as to Relators' complaint only to the extent that the allegations correspond to the Covered Conduct, and without prejudice to the United States as to all other allegations.

15.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement except for Relators' claims against DaVita under 31 U.S.C. § 3730(d) for expenses, attorneys' fees and costs, which are being resolved pursuant to the separate agreements referenced above in Paragraph 3.

16.     Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

17.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Northern District of Georgia. For purposes of construing this

Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

18.     This Agreement constitutes the complete agreement between the Parties (except as to the separate agreements referenced above in Paragraph 3). This Agreement may not be amended except by written consent of the Parties.

19.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

20.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

21.     This Agreement is binding on DaVita's successors, transferees, heirs, and assigns.

22.     This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

23.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

24.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

DATED: 6/23/15          BY: _____
                            JOHN HENEBERY
                            Trial Attorney
                            Commercial Litigation Branch
                            Civil Division
                            United States Department of Justice

DATED: 6/23/15          BY: _____
                            AMY L. BERNE
                            PARIS A. WYNN
                            Assistant U.S. Attorneys
                            U.S. Attorney's Office for the Northern
                            District of Georgia
                            Richard B. Russell Bldg.
                            75 Spring Street
                            Atlanta, GA 30303


**DAVITA HEALTHCARE PARTNERS, INC.**
**and DVA HEALTHCARE RENAL CARE, INC.**

DATED: _____  BY: _____
                            KIM RIVERA
                            Chief Legal Officer
                            DaVita Healthcare Partners, Inc.

DATED: _____  BY: _____
                            PAUL B. MURPHY
                            CHILTON VARNER
                            King & Spalding, LLP
                            1180 Peachtree Street NE
                            Atlanta, GA 30309

**THE UNITED STATES OF AMERICA**

DATED: _____    BY: _____

                                            JOHN HENEBERY
                                            Trial Attorney
                                            Commercial Litigation Branch
                                            Civil Division
                                            United States Department of Justice

DATED: _____    BY: _____

                                            AMY L. BERNE
                                            PARIS A. WYNN
                                            Assistant U.S. Attorneys
                                            U.S. Attorney's Office for the Northern District of Georgia
                                            Richard B. Russell Bldg.
                                            75 Spring Street
                                            Atlanta, GA 30303

**DAVITA HEALTHCARE PARTNERS, INC.**
**and DVA HEALTHCARE RENAL CARE, INC.**

DATED: _____    BY: _____

                                            KIM RIVERA
                                            Chief Legal Officer
                                            DaVita Healthcare Partners, Inc.

DATED: 6-22-15    BY: _____

                                            PAUL B. MURPHY
                                            CHILTON VARNER
                                            King & Spalding, LLP
                                            1180 Peachtree Street NE
                                            Atlanta, GA 30309

**RELATORS**

DATED: _July/22/15_   BY: _____
                          DR. ALON VAINER, M.D

DATED: _June, 22, 2015_  BY: _____
                          DANIEL BARBIR, R.N.

**RELATORS' COUNSEL**

DATED: _June 22, 2015_   BY: _____
                          L. LIN WOOD, ESQ.
                          1180 West Peachtree Street
                          Suite 2400
                          Atlanta, Georgia 30309

DATED: _June 22, 2015_   BY: _Marlan B. Wilbanks by_ _____ with express
                          MARLAN B. WILBANKS, ESQ.    permission + authority
                          TY M. BRIDGES, ESQ.
                          Wilbanks & Bridges, LLP
                          3414 Peachtree Rd Ne Suite 1075
                          Atlanta, Ga 30326